UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62281-ALTONAGA/STRAUSS

**ALEXANDER MEDINA,**

    Plaintiff,
v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 19] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 22]. This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters [DE 2]. I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 19] be **DENIED** and that Defendant's Motion [DE 22] be **GRANTED**.

    **I.**    **BACKGROUND & PROCEDURAL HISTORY**

Plaintiff applied for supplemental security income on October 7, 2019 ("Application Date"), alleging disability due to ADHD. Tr. 34, 78, 87, 99. He was 25 years old on the Application Date. Tr. 41. Plaintiff's claim was denied initially and upon reconsideration. Tr. 87, 99. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on November 16, 2020; a vocational expert ("VE") also appeared and testified at the hearing. Tr. 47-70. On December 9, 2020, the ALJ issued his decision, finding that Plaintiff was

not disabled under the Social Security Act. Tr. 34-42. On August 27, 2021, the Appeals Council of the Social Security Administration notified Plaintiff that it had granted his request for review. Tr. 4, 12. The Appeals Council subsequently issued an unfavorable decision on October 20, 2021, finding, like the ALJ, that Plaintiff is not disabled. Tr. 1-7.[1] Consequently, on November 4, 2021, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's

---

[1] The Appeals Council adopted the ALJ's findings in all but one respect. *See infra* Part III.C. The one alteration made by the Appeals Council, which pertained to step five of the sequential evaluation, is not germane to the error Plaintiff alleges in this proceeding – an alleged error concerning the ALJ's evaluation of the persuasiveness of an opinion from Plaintiff's treating physician, Dr. William Pittack.

factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III. DISCUSSION

#### A. The Sequential Evaluation

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)). *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). If no severe impairment is found, then the ALJ will conclude that there

is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. *Id.* If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## B. ALJ'S Application of the Sequential Evaluation

After considering the evidence, the ALJ found that Plaintiff was not disabled. Tr. 42. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 34-36. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Application Date. Tr. 36. Next, the ALJ found that Plaintiff had the severe impairment of ADHD. Tr. 36. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 37. In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied – i.e., whether Plaintiff's mental impairments resulted in one "extreme" or two "marked" limitations in the four broad areas of functioning. Tr. 37. The ALJ concluded that the "paragraph B" criteria were not satisfied because Plaintiff has no limitation in one area – understanding, remembering, or applying information – and "moderate" limitations in the other three areas – (1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself. Tr. 37-38.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled Specific Vocational Preparation (SVP) level 1 and 2 and General Educational Development (GED) levels 1 and 2 of simple, routine, and repetitive tasks, and occasional work setting changes. He is limited to occasional interaction with the public, coworkers and supervisors.

Tr. 38. As part of this assessment, the ALJ noted that he considered all of Plaintiff's symptoms and the extent to which his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. 38. Additionally, the ALJ stated that he considered the

6

medical opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c. Tr. 38.

In connection with determining Plaintiff's RFC, the ALJ discussed Plaintiff's hearing testimony and the medical evidence of record, concluding that the evidence failed to substantiate the degree of Plaintiff's subjective complaints. Tr. 39-40. The ALJ also evaluated the persuasiveness of the opinion evidence and prior administrative findings, determining that the findings of the state agency psychologists were persuasive but that the opinion of William Pittack, M.D., Plaintiff's treating psychiatrist, was not persuasive. Tr. 40.

After assessing Plaintiff's RFC, the ALJ noted that Plaintiff has no past relevant work. Tr. 40. Therefore, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in the national economy. Tr. 41-42. Purporting to rely on the VE's testimony,[2] the ALJ concluded that Plaintiff could perform the jobs of laundry laborer, hand packager, and marker, which the ALJ found to collectively have approximately 583,000 positions in the national economy. Tr. 41-42. Accordingly, the ALJ concluded that considering Plaintiff's "age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 42. Therefore, the ALJ found that Plaintiff was not disabled. Tr. 42.

C. **Appeals Council's Review**

As noted above, *see supra* note 1, the Appeals Council agreed with the ALJ's ultimate disability determination and with all but one aspect of the ALJ's decision. Specifically, while

---

[2] I use the word "purporting" because, as discussed in the next section, the ALJ incorrectly summarized the VE's testimony.

7

agreeing with the ALJ's step five finding that Plaintiff is capable of performing jobs existing in significant numbers in the national economy (considering his age, education, work experience and RFC), the Appeals Council disagreed with the three jobs identified in the ALJ's decision because those were not the jobs identified by the VE in his testimony. Tr. 6-7. Consequently, the Appeals Council "correct[ed] this error, and instead adopt[ed] the [VE] testimony finding that [Plaintiff] could perform" the jobs of cleaner/housekeeper, custodian, and laundry worker, which collectively have more than 247,000 positions in the national economy. Tr. 6-7. Nonetheless, the Appeals Council otherwise adopted the ALJ's findings, including his RFC determination, his findings regarding the persuasiveness of medical source opinions and prior administrative medical findings, and his other findings at steps one through four of the sequential evaluation. Tr. 4-7. Thus, the Appeals Council concluded that Plaintiff was not disabled at any time between the Application Date and the date of the ALJ's decision. Tr. 7.

### D. **Analysis**

Plaintiff challenges the ALJ's evaluation of Dr. Pittack's opinion (Tr. 321-23) and the ALJ's determination that the opinion was not persuasive. Notably, as the ALJ recognized at the November 2020 hearing, Dr. Pittack's opinion assessed several extreme limitations that, if accepted, would effectively result in a finding of disability. *See* Tr. 58. Thus, Dr. Pittack's opinion is crucial to Plaintiff's case. However, Plaintiff has failed to establish reversible error with respect to the ALJ's consideration of Dr. Pittack's opinion.

Because Plaintiff's claims were filed after March 27, 2017, the ALJ was required to consider the medical opinion evidence and prior administrative medical findings in Plaintiff's case in accordance with 20 C.F.R. § 416.920c. Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s)." 20 C.F.R. § 416.920c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the requirement to assign weight to medical opinions has been omitted from the revised regulation). Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. § 416.927 – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be. 20 C.F.R. § 416.920c(b).

Nonetheless, § 416.920c makes clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding. 20 C.F.R. § 416.920c(b)(1). In doing so, the ALJ must explain how he or she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he or she considered the other three factors. 20 C.F.R. § 416.920c(b)(2)-(3). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

>Here, the ALJ provided the following synopsis of Dr. Pittack's opinion:

>On September 21, 2020, Dr. Pittack completed a medical statement regarding attention deficits hyperactivity disorder. He indicated the claimant often failed to pay attention to details, had difficulty sustain[ing] attention, does not seem to listen when spoken to directly, often did not follow through on instructions and failed to finish tasks, often had difficulty organizing task and activities, often avoided to engage in tasks that required sustained mental effort, often lost things, was easily distracted by extraneous stimuli, and was often forgetful. Dr. Pittack indicated the claimant had moderate hyperactivity and severe inattention and impulsiveness. He indicated the claimant had extreme limitations in all areas of functioning (Ex. B10F).

Tr. 39. The ALJ subsequently addressed the persuasiveness of Dr. Pittack's opinion, stating as follows: "The statement by Dr. Pittack at Ex.B10F indicating that the claimant has mostly extreme limitations in mental functioning is not persuasive with his contemporaneous treating records that mostly show improvement of ADHD symptoms with medications and benign findings on the claimant's mental status exams." Tr. 40. Likewise, in adopting the ALJ's determination regarding the persuasiveness of Dr. Pittack's opinion, the Appeals Council stated that it agreed with the ALJ's finding that Dr. Pittack's opinion "is not persuasive because it is not supported by the source's contemporaneous treating medical records showing improvement of symptoms with medication treatment and generally benign findings in the claimant's mental status examinations." Tr. 5.

>In his motion, Plaintiff argues that the ALJ failed to properly assess the supportability and consistency of Dr. Pittack's opinion. As the excerpts in the prior paragraph show, the ALJ (and

10

the Appeals Council) expressly addressed the supportability and persuasiveness of Dr. Pittack's opinion, but as Defendant concedes, "did not explicitly address the consistency of Dr. Pittack's opinion with the medical evidence from other medical sources." [DE 22] at 11.  As discussed herein, having read and considered the ALJ's decision as a whole, and having reviewed the record, I find that the ALJ's supportability determination is supported by substantial evidence and that his failure to expressly address consistency does not warrant remand under the circumstances of this case.

First, the ALJ's (and Appeals Council's) supportability determination was reasonable and supported by substantial evidence.  As noted above, the ALJ found that Dr. Pittack's opinion was not supported by his own records for two independent reasons: (1) Dr. Pittack's records mostly showed improvement of symptoms with medication; and (2) Plaintiff's mental status examinations revealed generally benign findings.  In this vein, the ALJ further explained earlier in his decision that records from Citrus Health Network (where Plaintiff saw Dr. Pittack)

> consistently document [Plaintiff] responded to treatment and his mental status exams were benign with organized thought processes, full orientation in all spheres, no evidence or reported psychosis, no paranoia, no manic or hypomanic symptoms, and no suicidal or homicidal ideation.  These records further show he reported no adverse side effects from medications.

Tr. 37, 39. [3]

My own review of the records confirms that the ALJ's observations are supported by Dr. Pittack's progress notes.  The record includes nine progress notes from Dr. Pittack – from August

---

[3] At the November 2020 hearing, the ALJ appeared to observe that Dr. Pittack's treatment notes were inconsistent with Dr. Pittack's opinion.  Tr. 58.  In response, Plaintiff's counsel acknowledged that Dr. Pittack's treatment notes "are never very helpful" and that "[m]ental status, everything is pretty much normal."  Tr. 58.  While Plaintiff's counsel also argued that notwithstanding some improvement, "the focus and concentration problems are always in there," Tr. 59, the reality is, as illustrated further in the next paragraph, the ALJ reasonably found Dr. Pittack's opinion to be unsupported by Dr. Pittack's own records.

11

2019 (two months before the Application Date) (Tr. 268), September 2019 (Tr. 267), November 2019 (Tr. 266), January 2020 (Tr. 283), March 2020 (Tr. 282), May 2020 (Tr. 312), June 2020 (Tr. 311), July 2020 (Tr. 310), and August 2020 (Tr. 309).  All nine progress reports document the following: (1) orientation as awake/alert; (2) general appearance and behavior as fairly groomed and cooperative; (3) spontaneous speech; (4) organized thought processes; (5) no manic or hypomanic symptoms; (6) no paranoid ideation; (7) no auditory or visual hallucinations; (8) no suicidal or homicidal ideation; and (9) no abnormal involuntary movements.  Additionally, seven of the nine progress notes – all but September 2019 and January 2020 – document appropriate mood/affect.

Notably, in summarizing the medical evidence of record, Plaintiff's Motion solely discusses Dr. Pittack's nine treatment notes and Dr. Pittack's opinion.  *See* [DE 19] at 3-5.  That is because, as discussed further below, there is little (if any) relevant objective medical evidence of record beyond the treatment notes.  Thus, the fact that the ALJ reasonably found Dr. Pittack's opinion to be unsupported by his own treatment notes, when such treatment notes constitute the bulk of the medical evidence, is quite significant.

Nevertheless, in arguing that the ALJ's supportability rationale is inadequate, Plaintiff relies on three recent Eleventh Circuit cases.  *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019); *Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948 (11th Cir. 2019).  But these cases are distinguishable and/or inapplicable.  As an initial matter, all three cases considered opinion evidence under a regulation that only applies for social security claims filed prior to March 27, 2017.  *See, e.g., Simon*, 7 F.4th at 1104 n.4.  However, the claim in this case was filed in 2019.  Therefore, a new regulation applies.

*See* 20 C.F.R. § 416.920c (noting that this section applies to claims filed on or after March 27, 2017).

Significantly, as the Eleventh Circuit recognized in a binding opinion issued on June 27, 2022:

> The new regulation, 20 C.F.R. § 404.1520c (2017),[4] abrogated the "treating-physician rule" first developed by this and other courts of appeals. The treating-physician rule instructed administrative law judges to defer to the medical opinions of treating physicians in the determination of whether an individual is disabled under the Social Security Act. The new regulation instructs administrative law judges to give a treating physician's opinion no deference and instead to weigh medical opinions based on their persuasiveness.

*Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894 (11th Cir. 2022).[5]  Moreover, "[b]ecause section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious," the Eleventh Circuit found that it (and by extension, § 416.920c) "abrogates our earlier precedents applying the treating-physician rule." *Harner*, 38 F.4th at 896.  Of course, that would include precedents such as *Simon* and *Schink* that would otherwise be binding (and *Castro*, an unpublished opinion that may otherwise be persuasive).

---

[4] 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c provide the exact same framework for evaluating medical opinions and prior administrative medical findings.  The only difference is that § 404.1520c applies to claims under Title II of the Social Security Act (i.e., disability insurance benefit claims) and § 416.920c applies to claims under Title XVI of the Social Security Act (i.e., supplemental security income claims).

[5] *See also Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) ("In 2017, the SSA amended its regulations and removed the 'controlling weight' requirement for all applications filed after March 27, 2017."); *Planas*, 842 F. App'x at 498 ("[T]he ALJ referred to Dr. Erick Hernandez . . . as a 'treating source,' and acknowledged the requirement to assign weight to the medical opinions presented. These provisions have been omitted from the revised regulation."); *Planas*, 842 F. App'x at 497 n.1; *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018) ("The agency has eliminated the treating-physician rule for purposes of claims filed on or after March 27, 2017."); *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018) ("The treating physician rule was eliminated by the Social Security Administration for claims filed after March 27, 2017.").

This abrogation is significant. Plaintiff correctly asserts that cases like *Simon* have noted that "an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *Simon*, 7 F.4th at 1107. However, this statement was part of the court's discussion leading up to its conclusion that certain capabilities "observed during consultive examinations, without more, did not constitute or contribute to *good cause* to reject [a treating physician's] opinions." *Id.* at 1108 (emphasis added).[6] Various statements Plaintiff points to in *Schink* and *Castro* were likewise part and parcel of the recognition that a greater explanation than that provided in those cases was needed to supply good cause to discount or reject a treating physician's opinion where the treating-physician rule required extra deference. However, the treating-physician rule and good cause requirement that applied in *Simon*, *Schink*, and *Castro* does not apply here. And there is a significant difference between, on the one hand, finding that an ALJ's rationale is insufficient to discount an opinion that would otherwise be entitled to controlling weight and, on the other hand, finding that an ALJ's rationale is inadequate (applying a substantial evidence standard) to show that an opinion entitled to no special deference is not supported. Thus, the ALJ's reasons for finding that the supportability factor undermined the persuasiveness of Dr. Pittack's opinion are more than reasonably adequate given that Dr. Pittack's opinion is not entitled to any special deference (unlike the opinions of the treating physicians in cases such as *Simon*, *Schink*, and *Castro*).[7]

---

[6] Additionally, as Defendant contends, the ALJ in this case did not solely rely on mental status examinations; he also relied on Dr. Pittack's records documenting improvement in Plaintiff's symptoms with medication, improvement that was not limited to the clinic setting. *See* [DE 22] at 14.

[7] Moreover, those cases are also distinguishable. For instance, in *Simon*, in finding that the ALJ failed to provide good cause to reject a treating physician's opinion, the Court noted, *inter alia*, that the doctor's extensive treatment notes from more than thirty meetings over four years regularly reflected that the plaintiff displayed "severe symptoms of mental illness, such as frequent panic attacks, uncontrollable racing thoughts, volatile mood swings, paranoia about leaving his home,

Regarding the issue of consistency, as noted above, Defendant concedes that the ALJ and Appeals Council did not expressly address consistency. Plaintiff contends that this failure prevents this Court from engaging in meaningful review of the ALJ's decision. [DE 19] at 14; [DE 24] at 6. Defendant, however, contends that an ALJ is not required to use "magic language" in addressing the issue of consistency (and other factors),[8] and that in any event, the discussion of the ALJ and Appeals Council regarding the findings of the state agency psychologists shows that the ALJ and Appeals Council accounted for the consistency factor – by considering whether Dr. Pittack's opinion was consistent with the psychologists' findings. [DE 22] at 9, 11.

I agree with Plaintiff that the ALJ and Appeals Council erred in failing to expressly address the issue of consistency in evaluating Dr. Pittack's opinion. However, as discussed below, I find that this error was harmless because it did not affect the ALJ's ultimate determination, and therefore, that remand would be a "wasteful corrective exercise." *See Pons v. Comm'r of Soc. Sec.*, No. 21-13028, 2022 WL 1214133, at *2 (11th Cir. Apr. 25, 2022) ("We have applied the harmless error rule to social security appeals. If an error is harmless, we will not remand for further findings where doing so would be a 'wasteful corrective exercise.'" (internal citations omitted)); *Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) ("A harmless error—that is, one that does not affect the ALJ's ultimate decision—does not constitute a ground for reversal." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983))); *Sanchez v. Comm'r of Soc. Sec.*, 507 F.

---

and self-isolation from friends and family." 7 F.4th at 1105. Here, Dr. Pittack's notes do not reflect (regularly or otherwise) symptoms anywhere near those documented in *Simon*.

[8] *See* [DE 22] at 9 (citing *Frye v. Comm'r of Soc. Sec.*, No. 6:21-CV-741-DCI, 2022 WL 1045719, at *5 (M.D. Fla. Apr. 7, 2022); *Thaxton v. Kijakazi*, No. 1:20-CV-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022); *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021)); *see also Alvarez v. Comm'r of Soc. Sec.*, No. 20-CV-24711, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) ("[C]ourts have held that the ALJ need not use any 'magic words' in considering the two factors.").

App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." (citing *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981))); *Camacho v. Saul*, No. 19-63152-CIV, 2021 WL 2580355, at *3 (S.D. Fla. Apr. 15, 2021); *Garcia Travieso v. Berryhill*, No. 17-20021-CIV, 2018 WL 11346677, at *6 (S.D. Fla. Mar. 28, 2018) ("[R]emand is always a wasteful corrective exercise where no further findings could be made that would alter the ALJ's decision of non-disability.").

As discussed above, the consistency factor turns on whether an opinion is consistent with evidence from other sources. *See* 20 C.F.R. § 416.920c(c)(2). Here, the medical records are relatively thin. In fact, the medical evidence of record (Exhibits B1F-B11F), including Dr. Pittack's check-box opinion, spans just 82 pages. Tr. 243-324. Included in those 82 pages are records from 2013-2014 that are not relevant here (Tr. 243-65) and certain medical records unrelated to Plaintiff's mental condition (Tr. 286-300) (meaning they are unrelated to Dr. Pittack's opinion). Thus, excluding these items (Tr. 243-65, 286-300) and Dr. Pittack's opinion (Tr. 320-23), there are 40 pages of medical records. These 40 pages of medical records are from Citrus Health Network (where Plaintiff saw Dr. Pittack). As discussed above, in summarizing the medical evidence of record, Plaintiff's Motion solely discusses Dr. Pittack's nine treatment notes (which are included within the 40 pages) and Dr. Pittack's opinion. *See* [DE 19] at 3-5.

Beyond the 40 pages of records from Dr. Pittack/Citrus Health, the only other evidentiary sources (for purposes of comparing consistency) are essentially the state agency psychologists and Plaintiff. The findings of the state agency psychologists (Tr. 80-85, 92-97) are plainly inconsistent with Dr. Pittack's opinion, which the ALJ seemed to point out at the hearing. *See* Tr. 57-58 (noting that the state agency psychologists assessed only mild or moderate limitations when evaluating the

paragraph "B" criteria as opposed to Dr. Pittack who assessed "really, really severe issues"). As to Plaintiff's testimony, it undoubtedly is more in line with some of Dr. Pittack's opinion. However, the ALJ discounted Plaintiff's subjective complaints, and Plaintiff does not contend that the ALJ erred in evaluating Plaintiff's subjective complaints. Moreover, even some of Plaintiff's own statements are completely contrary to Dr. Pittack's opinion. For instance, the ALJ noted Plaintiff's reports of: (1) being able to care for his personal needs and hygiene (albeit with reminders); (2) taking his medication without needing reminders; (3) being able to prepare simple meals; (4) getting along with other people; (5) getting along well with people in authority; and (6) being able to handle stress (albeit with difficulty handling changes in routine). Tr. 37. Yet, as the ALJ noted, Dr. Pittack assessed extreme limitations in all areas of functioning. Tr. 39. Dr. Pittack's opinion assessed, *inter alia*, extreme limitations in social functioning, personal functioning self-care, interacting and relating with others, and caring for self. Tr. 322-23.

At any rate, the ALJ provided adequate reasons for finding that the supportability factor undermined the persuasiveness of Dr. Pittack's opinion. Additionally, the ALJ found the findings of the state agency psychologists (who, unlike Dr. Pittack, did not make statements elsewhere that undermined their findings) to be persuasive, and those findings were plainly inconsistent with Dr. Pittack's opinion. Accordingly, and based upon the ALJ's discussion in his decision and observations at the hearing, this Court has the ability to conduct a meaningful review. Upon review, it is evident that remanding this matter would not affect the ultimate disability determination. Rather, remand would be a "wasteful corrective exercise" that would achieve nothing other than requiring the ALJ to add a couple sentences addressing consistency.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 19], **GRANT** Defendant's Motion [DE 22], and **AFFIRM** the final decision of the Commissioner.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 23rd day of August 2022.

*[signature]*
Jared M. Strauss
United States Magistrate Judge